UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD WASHINGTON, | ) | CASE NO.  1:21-cv-1102 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) | |
| | ) | |
| LENZY FAMILY INSTITUTE, | ) | **MEMORANDUM OPINION** |
| INC., *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before this Court is The Lenzy Family Institute, Inc. and Lenzy Family Institute Board of

Directors (the "Lenzy Defendants") partial motion to dismiss Plaintiff Leonard Washington's

amended complaint.  (Doc. No. 24.)  Plaintiff opposed this motion.  (Doc. No. 28.)  For the

reasons stated below, this motion is GRANTED in part and DENIED in part.

I. **Background**

A. **Factual Allegations**

Defendant Lenzy Institute, Inc. ("Lenzy") is an Ohio nonprofit corporation offering

mental health diagnostic and curative services.  (Doc. No. 22 at PageID 395, ¶ 8.)  Lenzy's

principal place of business is in Canton, Ohio.  (*Id.*)  Defendant Lenzy Institute Board of

Directors ("Lenzy Board") is Lenzy's governing body.  (*Id.* at PageID 395, ¶ 9.)

Lenzy hired Plaintiff on or about October 27, 2016, as a Residential House Worker and

Treatment Counselor.  (*Id*. at PageID 395, ¶ 11.)  Plaintiff became a full-time Lenzy employee in

January 2018.  (*Id.* at PageID 395, ¶ 13.)

On or about January 15, 2018, Lenzy announced a new healthcare group coverage plan,

1

and Plaintiff became insured under UnitedHealthcare Group Policy number 02Y9798 (the "First UHC Plan").  (*Id.* at PageID 395, ¶ 12.)  On or about February 1, 2019, Plaintiff's coverage under the First UHC Plan was replaced or substituted by UnitedHealthcare Group Policy number GA2Y9798IM (the "Second UHC Plan").  (*Id.* at PageID 395, ¶ 14.)

Lenzy management made premium payments directly to UnitedHealthcare to fund the Plans.  (*Id.* at PageID 396, ¶¶ 15-16.)  Lenzy funded the premium payments through monthly deductions from employee paychecks.  (*Id.*)  Lenzy management had the discretion to determine the amount of each deduction.  (*Id.*)  At some point, Lenzy stopped making the premium payments.  (*Id.*)  Lenzy, however, continued making the monthly deductions.  (*Id.*)

UnitedHealthcare terminated the Second UHC Plan on or about June 2, 2019.  (*Id.* at PageID 396, ¶ 17; UHC Complaint Doc No. 22-2[1] at PageID 409.)  The Lenzy Defendants owed UnitedHealthcare over $30,000 in unpaid premium payments.  (Doc. No. 22 at PageID 396, ¶ 18.)  Lenzy did nothing to ensure Plaintiff received coverage under another plan.  (*Id.* at PageID 396, ¶ 20.)  Even after the termination of the Second UHC Plan, the Lenzy Defendants continued to deduct premium payments from Plaintiff's and other employees' paychecks.  (*Id.* at PageID 396, ¶ 21.)  Lenzy's Executive Director, Elizabeth Lenzy ("Ms. Lenzy"), did not lose coverage after UnitedHealthcare's termination because she had supplemental policies through Aflac and Medicare.  (*Id.* at PageID 396-97, ¶¶ 19, 25.)

At some point before Lenzy laid Plaintiff off on March 16, 2020, Lenzy materially

---

[1] Plaintiff attaches a complaint filed by UnitedHealthcare against the Lenzy Defendants in the Stark County Ohio Court of Common Pleas (the "Stark County Complaint") to his amended complaint.  (Doc. No. 22-2 at PageID 409.)  The Court considers the Stark County Complaint because it is (a) attached to Plaintiff's amended complaint, (b) referred to in the amended complaint, and (c) central to Plaintiff's claims.  *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

reduced Plaintiff's hours.  (*Id.* at PageID 397-98, ¶¶ 27, 32.)  Moreover, throughout Plaintiff's employment at Lenzy, "he was incorrectly paid and not paid for all of his work, and because of this, his hours worked were reduced."  (*Id.* at PageID 397, ¶ 26.)  Neither Lenzy, the Lenzy Board, nor Ms. Lenzy provided Plaintiff with notice or documentation of any modifications or changes to his insurance coverage, including termination of coverage.  (*Id.* at PageID 396-97, ¶¶ 22-23.)  Nor did they notify Plaintiff about Continuation of Health Coverage ("COBRA") rights or related information.  (*Id.* at PageID 397, ¶ 23.)

### B. Procedural History

On May 28, 2021, Plaintiff initiated this complaint against Lenzy, the Lenzy Board, UnitedHealthcare, and John Doe I & II.  (Doc. No. 1.)  On June 24, 2021, Lenzy and the Lenzy Board filed a motion to dismiss for failure to state a claim (Doc. No. 7) and an answer to the complaint (Doc. No. 8).  On the same day, UnitedHealthcare submitted an answer.  (Doc. No. 9.)

On July 23, 2021, Plaintiff filed a motion for leave to file first amended complaint (Doc. No. 13) and a motion to stay the motion to dismiss until rendering a decision on the motion for leave (Doc. No. 14.)  On October 26, 2021, the Court granted Plaintiff's motion to file the first amended complaint and denied the motion to stay as moot.  (Doc. No. 21.)

On October 29, 2021, Plaintiff filed his first amended complaint.  (Doc. No. 22.)  The complaint contains six counts: violation of 29 U.S.C. § 1165(a) and § 1166(a)(3)-(4) and (c) for failure to give notice of COBRA benefits (Count I), violation of the Employee Retirement Income Security Act's ("ERISA") disclosure notification requirements (Count II), breach of fiduciary duties (Count III), breach of duties under Ohio Rev. Code § 4113.15(C) (Count IV), equitable estoppel under ERISA (Count V), and promissory estoppel (Count VI).

On November 12, 2021, Lenzy and the Lenzy board filed an answer to Plaintiff's

3

amended complaint (Doc. No. 25) and a motion to dismiss counts I, III, and VI and to partially dismiss count II (Doc. No. 24) of Plaintiff's amended complaint.

On December 8, 2021, Plaintiff filed a notice of dismissal without prejudice of his claims against UnitedHealthcare.  (Doc. No. 27.)  On December 21, 2021, the Court dismissed UnitedHealthcare.  (Doc. No. 29.)

## II.  <u>Discussion</u>

### A.  Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 566 U.S. at 678.

A complaint need not set down in detail all the particulars of a plaintiff's claim.  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 566 U.S. at 678 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard.  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

### B.  Count I: COBRA Notification

Count I is premised on Defendants' failure to provide Plaintiff with notice of COBRA rights and continuation benefits information as required by 29 U.S.C. §§ 1165 & 1166.  (Doc. No. 22 at PageID 397.)

### 1.  Overview of Relevant Law

COBRA was enacted to ensure employees who lose coverage under their employer-sponsored healthcare plans do not go without coverage before finding suitable replacement coverage.  *Morehouse v. Steak N Shake*, 938 F.3d 814, 818-19 (6th Cir. 2019).  The statute allows employees "to continue their health insurance coverage, at group rates but at their own expense, for at least 18-months after the occurrence of a 'qualifying event' and notice to the

affected employee." *Id.* at 819 (quotations and citations omitted). And to ensure employees are made aware of this entitlement, "COBRA requires an employer to provide employees and qualified beneficiaries with notification of their right to receive continued health insurance benefits within a specific period of time after the occurrence of the qualifying event." *Id.* In short, employers must provide employees with notice after the occurrence of a "qualifying event." *See id.*; *see also* 29 U.S.C §§ 1161 & 1166. This notice provides the employee with information to avoid loss of coverage.

The exhaustive list of "qualifying events" that trigger COBRA's notice requirements is stated in 29 U.S.C. § 1163:

> For purposes of this part, the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:
>
> 1) The death of the covered employee.
>
> 2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
>
> 3) The divorce or legal separation of the covered employee from the employee's spouse.
>
> 4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act.
>
> 5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
>
> 6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163.

## 2. Parties' Arguments

In his amended complaint, Plaintiff states that he faced various "qualifying events," and Defendants failed to provide him with notice as required by COBRA.  (Doc. No. 22 at PageID 398, ¶¶ 32, 33.)  The relevant paragraphs are as follows:

> The termination of Plaintiff's employment, material reduction in hours of Plaintiff during the coverage period from January 15, 2018, to June 2, 2019, which impacted his eligibility for coverage under the Plan, and total loss of coverage by virtue of the termination of the Policy as a result of Lenzy Institute's and Lenzy Board's non-payment of premiums are separate "qualifying events" as defined by ERISA § 603; 29 U.S.C. § 1166; 26 CFR 54.4980B-4.

> Defendants had a duty to mail to Plaintiff notification of COBRA continuation rights in compliance with ERISA § 601-609.

(*Id.*)  In short, Plaintiff pleads that three "qualifying events" triggered Defendants' duty to notify him of COBRA benefits: termination of Plaintiff's employment, material reduction in hours, and termination of the Second UHC Plan.  (*See id.*)

In their motion to dismiss, Defendants proffer that Plaintiff has not properly alleged a violation of COBRA's notice provisions because he never alleged that a "qualifying event" *resulted* in a loss of coverage.  (Doc. No. 24-2 at PageID 668-73.)  First, Defendants note that Plaintiff's termination is not a "qualifying event" because it occurred nine months after the Second UHC Plan was terminated, meaning his termination could not have possibly resulted in a loss of coverage.  (Doc. No. 24-2 at PageID 670-71; *see also* Doc. No. 22 at PageID 396-97, ¶¶ 17, 27.)  Second, Defendants argue that Plaintiff only provides the insufficient allegation that his hours were materially reduced and "impacted" his eligibility for coverage, as opposed to stating that said reduction in hours "resulted" in a loss of coverage.  (Doc. No. 24-2 at PageID 672.)  Third, Defendants articulate that a termination of benefits is not a "qualifying event" under 29 U.S.C. § 1163, which provides an exhaustive list of "qualifying events."  (*Id.* at PageID 668-69

(citing *Ashcraft v. Shenango Furnace Co.*, 56 F. Supp. 2d 895, 904 (N.D. Ohio 1999).)

Plaintiff counters the claim should not be dismissed because his material reduction in hours triggered the COBRA notification obligation.  (Doc. No. 28 at PageID 983-84.)  Citing an IRS regulation, Plaintiff notes that "a loss of coverage need not occur immediately after the end of the [qualifying] event, so long as the loss of coverage occurs before the end of the maximum coverage period."  (*Id.* at PageID 983 (citing 26 C.F.R. § 54.4980B-4).)  Thus, to Plaintiff, he alleged a viable claim because he stated that: (a) Lenzy materially reduced his hours, which is a "qualifying event" under 29 U.S.C. § 1163; (b) this reduction in hours "impacted" his eligibility for coverage under the Second UHC Plan; and (c) he had his coverage terminated within the maximum coverage period, which is generally within 18 or 36 months following a "qualifying event."  (*Id.* at PageID 983-84.)

### 3.  Analysis

Plaintiff has failed to state a viable COBRA notification claim, as he has not alleged that the occurrence of a "qualifying event" *resulted* in a loss of coverage.

To start, Plaintiff steps back from his allegations that UHC's termination of the Second Policy and Lenzy's termination of his employment constituted "qualifying events."  Defendants correctly note that neither event triggered COBRA's notification requirements.  Termination of benefits is not listed as a "qualifying event" in 29 U.S.C. § 1163.  And the complaint clearly states that Lenzy terminated Plaintiff after the Second UHC Policy was canceled.  (Doc. No. 22 at PageID 396-97, ¶¶ 17, 27.)

As to the one part of his claim that Plaintiff defends – the material reduction in hours – Plaintiff's arguments are not well-taken.  He is correct to note that, under 26 C.F.R. § 54.4980B-4, the termination of coverage need not occur immediately after a "qualifying event."  But

relying on this regulation misses the fact that the statute still requires the "qualifying event" to "result in the loss of coverage."  29 U.S.C. § 1163.  Put another way, although the coverage does not necessarily have to be canceled immediately after a "qualifying event," the "qualifying event" still must cause the cancelation of coverage to trigger COBRA's notification requirements.  *See id.*

One of the cases Plaintiff cites illustrates this point.  *Morehouse v. Steak N Shake*, 938 F.3d 814 (6th Cir. 2019).  In *Morehouse*, an employee was injured on the job, forcing her to take FMLA leave and collect workers' compensation.  *Id.* at 817.  While she was on leave, the employee's health plan was funded by deductions from the employee's workers' compensation. *Id.*  But that entitlement expired, the employee stopped paying her premiums, and her insurance was canceled.  *Id.*  The employee sued the employer for failure to provide notice of her right to COBRA benefits under the theory that her medical leave was a material reduction in hours and, thus, constituted a "qualifying event."  *Id.* at 819.  The Sixth Circuit dismissed this claim, finding that the plaintiff's failure to pay her premiums – not her reduction in hours – resulted in loss of her coverage.  *Id.* at 820-21.  In other words, the Court found a lack of causal connection between the purported "qualifying event" and the loss of coverage.  *See id.* at 819.

*Morehouse* applies here.  In the same paragraph that Plaintiff alleges that his material reduction in hours was a "qualifying event," Plaintiff states his "loss of coverage" was "by virtue of the termination of the Policy as a result of Lenzy Institute's and Lenzy Board's non-payment of premiums."  (Doc. No. 22 at PageID 398, ¶ 32.)  In other words, drawing all inferences in Plaintiff's favor and relying on the allegations stated in the amended complaint, Plaintiff's insurance was terminated because of Defendants failed to pay premiums, not because Defendants reduced his hours.  (*See id.*)  Under *Morehouse*, this admission precludes Plaintiff from asserting

the reduction in hours was a "qualifying event." *See Morehouse*, 938 F.3d at 819 ("A 'reduction in hours' is not necessarily a qualifying event; it must also lead to a loss in insurance coverage.").

Defendants' motion to dismiss Count I of Plaintiff's complaint is GRANTED.[2]

### C.  Count II: ERISA Procedural Provisions

#### 1. Overview of Relevant Law

ERISA requires employers to provide beneficiaries with a summary plan description ("SPD") if there is a "material reduction in covered services or benefits provided under a group health plan."  29 U.S.C. § 1024(b)(1)(B).  The SPD must "be written in a manner calculated to be understood by the average plan participant."  29 U.S.C. § 1022(a).  When there is a "material reduction in covered services or benefits," the employer must provide beneficiaries with the SPD within 60 days "of the adoption of the modification or change."  29 U.S.C. § 1024(b)(1)(B).  A "material reduction in covered services or benefits" includes "any plan modification or change that[] eliminates benefits payable under the plan."  29 C.F.R. § 2520.104b-3(d)(1)(3).

"[V]iolations of the procedural sections of ERISA do not give rise to claims for substantive damages."  *Anderson v. Mrs. Grissom's Salads, Inc.*, 221 F.3d 1333, 2000 WL 875365, at *3 (6th Cir. 2000).  However, ERISA does allow beneficiaries to sue an employer who fails to furnish information that a beneficiary is entitled to within 30 days after the

---

[2] Plaintiff's amended complaint references Ohio's "mini COBRA" statute, Ohio Rev. Code § 3923.38.  (Doc. No. 22 at PageID 397, ¶ 24.)  The Court agrees with Defendants that Plaintiff has not stated a colorable claim under this statute.  (Doc. No. 24-2 at PageID 668.)  First, Plaintiff abandoned this claim by not addressing any of Defendants' arguments regarding this statute in his opposition brief.  Second, the statute requires the employer to provide beneficiaries notice of their right to continuing coverage at the time of termination.  Ohio Rev. Code § 3923.38(C)(2).  Here, Plaintiff's termination happened well after his loss of coverage.  (Doc. No. 22 at PageID 396-97, ¶¶ 17, 27.)

beneficiary requests said information.  29 U.S.C. § 1132(c)(1).  If the beneficiary prevails on one of these claims, they may seek "up to $100 a day from the date of such failure or refusal" to provide the requested information.  *Id.*  The beneficiary may also move for an award of costs and attorney's fees.  29 U.S.C. § 1132(g)(1).  The statutory remedy of $100 a day and attorney's fees are all that a court may impose for failure to provide the requested information.  *Anderson*, 2000 WL 875365, at *3.

### 2. Parties' Arguments

Defendants move to partially dismiss Count II of Plaintiff's amended complaint, which Plaintiff premises on Defendants' failure to provide him with the SPD, an Annual Funding Notice, and a Summary Annual Report.  (Doc. No. 22 at PageID 398-400, ¶¶ 38-50.)  For these violations, Plaintiff asks for "losses resulting from the violations and statutory *per diem* damages."  (*Id.* at PageID 400, ¶ 49.)

Defendants assert that the claim should be partially dismissed because Plaintiff is not eligible for any damages other than the *per diem* damages set forth in 29 U.S.C. § 1132(c)(1).  (Doc. No. 24-2 at PageID 674.)  Defendants also argue that Plaintiff incorrectly stated that Defendants were required to provide him the SPD after the termination of the Second UHC Plan because termination of a plan is not "material reduction in covered services or benefits."  (*Id.* at PageID 673.)

Plaintiff responds that he is entitled to attorney's fees and costs, in addition to the *per diem* penalties set forth in 29 U.S.C. § 1132(c)(1).  (Doc. No. 28 at PageID 974.)  Otherwise, Plaintiff and Defendants do not dispute that Count II does not entitle Plaintiff to any other form of damages.  (*See id.*)  To the extent there is confusion in the pleadings, Plaintiff clarifies that Count III of his complaint – which relates to Defendants' purported breach of fiduciary duties as

the sponsors of the Second UHC Plan – entitles him to more extensive damages.  (*Id.* at PageID 980-81.)  As to Defendants' contention that the termination of the UHC Plan was not a "material reduction in covered services or benefits," Plaintiff cites 29 C.F.R. § 2520.104b-3(d)(1)(3), which states that "any plan modification or change that[] eliminates benefits under the plan" is a "material reduction in covered services or benefits."  (*Id.* at 973-74.)

### 3. Analysis

As an initial matter, Plaintiff's procedural ERISA claims, brought under 29 U.S.C. § 1132(c)(1), only potentially entitle him to the *per diem* damages outlined in that statute. *Anderson*, 2000 WL 875365, at *3.  Plaintiff rightfully concedes this point by not stating otherwise in his opposition brief.  But Plaintiff also correctly notes that he may still move for attorney's fees and costs under 29 U.S.C. § 1132(g)(1).  *See Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 859 (N.D. Ohio 2013), *aff'd*, 748 F.3d 698 (6th Cir. 2014). Accordingly, the Court grants Defendants' motion with respect to *per diem* damages for Count II.  It denies Defendants' motion to the extent it seeks to limit Plaintiff's ability to move for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

Moving to Defendants' other argument, Plaintiff has plausibly alleged that Defendants were required to provide him with the SPD after UnitedHealthcare terminated the Second Plan. The definition of "material reduction in covered services or benefits" includes "any plan modification or change that[] eliminates benefits payable under the plan."  29 C.F.R. § 2520.104b-3(d)(1)(3).  And when a beneficiary is faced with "a material reduction in covered services or benefits," they are entitled to the SPD within 60 days "of the adoption of the modification or change."  29 U.S.C. § 1024(b)(1)(B).

Plaintiff alleged a "material reduction in covered services or benefits" because his

12

coverage under the Second UHC Plan was eliminated on June 2, 2019. (Doc. No. 22 at PageID 396, ¶ 17.) Further, Plaintiff states that Defendants failed to notify him about any modifications to or termination of his medical insurance (*Id.* at PageID 396, ¶ 22), including providing him with the SPD (*Id.* at PageID 400, ¶ 48). This part of Count II was adequately alleged.

Accordingly, Defendants' motion to partially dismiss Count II of Plaintiff's amended complaint is granted in part and denied in part.

### D. Count III: ERISA Fiduciary Duty Claim

#### 1. Overview of Relevant Law

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must plead: (a) that the defendant is a plan fiduciary, (b) the defendant breached a fiduciary duty, and (c) the breach harmed the plaintiff. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). ERISA states that a person is a plan fiduciary to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A). Fiduciaries under ERISA must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

#### 2. Parties' Arguments

The section dedicated to Count III of Plaintiff's amended complaint explains that Plaintiff's ERISA fiduciary duty claim is premised on the same allegations as Counts I & II:

> Defendants breached their fiduciary duties under ERISA by failing to furnish all required notices, documents and reports to Plaintiff, including without limitation,

notice of continuation coverage of coverage rights, a summary plan description and material modification to benefits under the Plan, subjecting Defendants to *per diem* statutory penalties and other damages for each day they failed to provide the required notices, documents, and reports.

* * *

In further breach of their fiduciary duties, Defendants failed to provide notice to Plaintiff of the termination or modification of the Plan and resulting cancellation of his benefits under the Plan.

(Doc. No. 22 at PageID 401-02, ¶¶ 56, 58.)  But at the top of this section, Plaintiff incorporates all allegations in the preceding paragraphs.  (*Id.* at PageID 400, ¶ 51.)

Defendants advance two arguments in their motion to dismiss.

First, Defendants assert that ERISA fiduciary claims premised on an employer's failure to furnish the beneficiary with certain information must specify what documents the employer did not provide.  (Doc. No. 24-2 at PageID 676-77.)  To Defendants, Plaintiff's amended complaint fell short in this regard.  (*See id.*)

Second, Defendants argue that to the extent that Plaintiff's fiduciary claim relies on Defendants' failure to provide him with the SPD after starting coverage under a Lenzy-sponsored plan, the statute of limitations bars the claim.  (*Id.* at PageID 677.)  Specifically, Defendants cite 29 U.S.C. § 1113's provision providing that the six-year statute of limitations may be shortened to three years "where the victim had 'actual knowledge of the breach or violation.'"  (*Id.*)  Defendants then cite Sixth Circuit caselaw teaching that knowledge does not mean knowledge of the relevant law but only knowledge of the relevant facts.  (*Id.*)  And, according to the amended complaint, Plaintiff knew of all relevant facts related to the Defendants' failure to provide the SPD after he became covered under a Lenzy-sponsored policy more than three years before filing of this complaint.  (*Id.*)

For his part, Plaintiff clarifies that his fiduciary duty claim is premised on the

Defendants' refusal to "notify Plaintiff and the other plan participants of their failure to pay premiums and termination of coverage." (Doc. No. 28 at PageID 976; *see also* Doc. No. 22 at PageID 396, 402, ¶¶ 16, 17, 58.) Plaintiff then cites various caselaw standing for the proposition that such failure can establish a viable ERISA fiduciary breach claim. (*See* Doc. No. 24-2 at PageID 975-981.) And if Plaintiff prevails under this theory, he is entitled to actual, rather than *per diem*, damages. (*Id.* at PageID 980.) Finally, Plaintiff responds to Defendants' statute of limitations argument by asserting that the Court, while reviewing a motion to dismiss, is not permitted to make a factual inference that Plaintiff knew that he was entitled to the SPD. (*Id.*)

### 3. Analysis

Defendants' statute of limitations argument is not well-taken. Nowhere in Plaintiff's amended complaint does it state that the breach of fiduciary duty claim is premised on the failure to furnish the SPD after his coverage began. In fact, Plaintiff focuses his fiduciary duty claim on Defendants' failure to provide notice after UHC terminated his coverage due to missed premium payments. (Doc. No. 22 at PageID 396, 402, ¶¶ 16, 17, 58.) Termination of coverage occurred on or about June 2, 2019 – less than three years after Plaintiff initiated this action on May 28, 2021.[3] (Doc. No. 1; Doc. No 22 at PageID 396, ¶ 17.) The statute of limitations, therefore, does not bar this claim.

Plaintiff's amended complaint sufficiently alleges a breach of fiduciary duty claim. "[A]n employer who has control over amounts withheld from employees' paychecks for the purpose of paying ERISA plan premiums is a fiduciary." *Munsey v. Tactical Armor Prod., Inc.*, No. 3:07-cv-445, 2008 WL 4442551, at *2 (E.D. Tenn. Sept. 25, 2008). An ERISA fiduciary

---

[3] The Court makes no finding of whether the six- or three-year statute of limitations applies in this case.

must timely remit premium payments deducted from employees' paychecks to prevent any loss of coverage. *McFadden v. R&R Engine & Mach. Co.*, 102 F. Supp. 2d 458, 471 (N.D. Ohio 2000); *see also Maccarone v. Lineage L., LLC*, No. CV 17-212-SDD-EWD, 2018 WL 6579161, at *5 (M.D. La. Dec. 13, 2018) (citing *McFadden* to deny summary judgment on a claim where the employer failed to remit premium payments resulting in loss of coverage). When such duty is breached, the beneficiary *may*[4] be entitled to damages beyond *per diem* damages. *McFadden*, 102 F. Supp. 2d at 475.

Thus, Plaintiff's allegations that (a) Defendants deducted premium payments from his paychecks and (b) failed to remit said payments to the insurance provider, which (c) resulted in a loss of coverage, are enough to state a colorable breach of a fiduciary duty claim under ERISA. (Doc. No. 22 at PageID 396, ¶¶ 16-18.) Defendants' failure to provide notice of UHC's termination of the Second Plan is also a valid basis for a breach of fiduciary duty claim. (*Id.* at PageID 396, ¶ 19.) *Peralta v. Hisp. Bus., Inc.*, 419 F.3d 1064, 1073 (9th Cir. 2005) ("Employees are entitled to know if they have or do not have an ERISA plan. Failure to so advise employees violates the obligation of a fiduciary to discharge his duties in the interest of the participants with 'care, skill, prudence, and diligence.'" (quoting 29 U.S.C. § 1104(a)(1)(B)).

---

[4] The Court recognizes that this portion of *McFadden*'s holding was later called into question by another court in this District. *See Pfahler v. Nat'l Latex Co.*, 405 F. Supp. 2d 839, 847-48 (N.D. Ohio 2005). By way of background, *McFadden* held that beneficiaries were entitled to restitution resulting from the employer's missed premium payments, which the court characterized as an "equitable remedy." 102 F. Supp. 2d at 475. The *Pfahler* court disagreed with *McFadden*'s characterization of restitution as an equitable remedy. 405 F. Supp. 2d at 847-48. *Pfahler* was appealed, and the Sixth Circuit declined to address this portion of the court's decision. *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 834 (6th Cir. 2007) (affirming in part and reversing in part the lower court's decision). This Court makes absolutely no determination on the type or amount of damages that Plaintiff can recover if he prevails on the claim alleged in Count III. If necessary, this issue may be resolved later litigation after briefing by both parties. As of now, this issue is not ripe for determination.

Accordingly, Defendants' motion to dismiss Count III of Plaintiff's amended complaint is denied.

### E.  Count VI: Promissory Estoppel

#### 1. Overview of Relevant Law

Unless otherwise agreed, all employees are presumed at-will under Ohio law.  *See Henkel v. Educ. Rsch. Council of Am.*, 344 N.E.2d 118, 119 (Ohio 1976).  "[E]ither an employer or an employee in an at-will relationship may propose to change the terms of their employment at any time."  *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004).   If the employee is dissatisfied with such a change, his remedy "is to quit."  *Id.*  "[T]he Supreme Court of Ohio has recognized a limit on an employer's right to discharge an employee where representations or promises have been made to the employee which fall within the doctrine of promissory estoppel."  *Whisman v. Ford Motor Co.*, 157 F. App'x 792, 801 (6th Cir. 2005) (quoting *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 154 (Ohio 1985) (quotations and alterations omitted).  "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."  *Id.* at 801-02 (quotations omitted).

#### 2. Parties' Arguments

Plaintiff's promissory estoppel claim is based on allegations that he relied in good faith on Defendants' clear and unambiguous promise to provide him with health insurance.  (Doc. No. 22 at PageID 405, ¶¶ 76-78.)  Plaintiff alleges it was reasonable to rely on this promise, and his reliance on it was to his detriment.  (*Id.* at PageID 405, ¶¶ 79-81.)

 Defendants seek to dismiss the claim because, as an at-will employee, Plaintiff has no

legal basis for contesting a change in the terms and conditions of his employment at Lenzy.
(Doc. No. 24-2 at PageID 678.)  To Defendants, at-will employees cannot justifiably rely on a
promise of continuing health insurance.  (*Id.*)

In response, Plaintiff argues that the at-will employment doctrine does not bar all
promissory estoppel claims.  (Doc. No. 28 at PageID 982.)  At-will employees, like him, may
still prevail on a promissory estoppel claim if they show that the employer should reasonably
have expected the employee to detrimentally rely on the promise of future employment or
continuing benefits.  (*Id.*)  Here, Plaintiff states that he has adequately alleged that Defendants
should have expected that he would detrimentally rely on their promise to provide him with
health insurance, as he signed up for the UHC Plans and allowed Defendants to deduct from his
paychecks to fund these plans.  (*Id.*)  These facts, Plaintiff posits, are enough to state a
promissory estoppel claim in the at-will employment context.

### 3. Analysis

Plaintiff has stated a colorable promissory estoppel claim.  Plaintiff alleges that
Defendants promised to provide him with health insurance.  (Doc. No. 22 at PageID 405, ¶¶ 76-
81.)  Relying on this promise, Plaintiff allowed Defendants to make monthly deductions from his
paychecks in order to fund his insurance.  (*Id.* at PageID 396, ¶¶ 15-16.)  Plaintiff states that he
always believed these deductions were being used to fund his coverage.  (*Id.* at PageID 396, 405
¶¶ 17-18, 79-81.)  This reliance was to Plaintiff's detriment.  (*See id.*)  Defendants cite no
caselaw for the proposition that these allegations, if true, are not enough to prevail on a
promissory estoppel claim.  At a minimum, when an employee allows an employer to deduct pay
to fund his healthcare, it is plausible that the employee has a reasonable expectation that the
employer will use the money for the stated purpose.  The expectation may be reasonable even

when that employee is subject to at-will termination.  *See Whisman*, 157 F. App'x at 801-02.

Accordingly, Defendants' motion to dismiss Count VI of Plaintiff's amended complaint is denied.

## III.  Conclusion

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  (Doc. No. 24.)  A summary of the Court's Order is as follows:

- Count I of Plaintiff's amended complaint is dismissed;

- Count II of Plaintiff's amended complaint is dismissed only to the extent it seeks damages beyond the *per diem* damages, attorney's fees, and costs set forth in ERISA;

- Plaintiff has plausibly alleged a claim for breach of fiduciary duty under ERISA in Count III of his amended complaint; and

- Plaintiff has plausibly alleged a claim for promissory estoppel in Count VI of his amended complaint.

**IT IS SO ORDERED.**

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: December 22, 2022

19