UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD WASHINGTON, | ) | CASE NO. 1:21-cv-1102 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| LENZY FAMILY INSTITUTE, | ) | |
| INC., *et al.*, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before this Court is Plaintiff's Motion for Default Judgment. (Doc. No. 53.) For the reasons that follow, this motion is DENIED *without prejudice*.

**I. Governing Law**

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b). Here, Plaintiff applied for an entry of default on July 7, 2023 (Doc. No. 51), and the clerk entered Defendants' default on July 10, 2023 (Doc. No. 52).

Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R.

1

Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

Unlike allegations on liability, damages allegations are not taken as true at this stage in litigation. *Northern Innovations Holding Corp. v. Keto Plan, Inc.*, 2022 WL 999150, at *3 (N.D. Ohio April 4, 2022). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-CV-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Against this backdrop, the Court turns to the allegations in Plaintiff's complaint. (Doc. No. 37.)

## II. Summary of Relevant Factual Allegations

Defendant Lenzy Institute, Inc. ("Lenzy") is an Ohio nonprofit corporation offering mental health diagnostic and curative services. (*Id.* at 1051, ¶ 7.)[1] Lenzy's principal place of business is in Canton, Ohio. (*Id.*) Defendant Lenzy Institute Board of Directors ("Lenzy Board") is Lenzy's governing body. (*Id.* at 1051, ¶ 8.) Defendant Elizabeth Lenzy ("Ms. Lenzy") is the Executive Director and key principal of the Lenzy Institute. (*Id.* at 1051, ¶ 9.)

Lenzy hired Plaintiff on or about October 27, 2016, as a Residential House Worker and Treatment Counselor. (*Id*. at 1051, ¶ 10.) Plaintiff became a full-time Lenzy employee in January 2018. (*Id.* at 1052, ¶ 14.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

On or about January 15, 2018, Lenzy announced a new healthcare group coverage plan, and Plaintiff became insured under UnitedHealthcare Group Policy number 02Y9798 (the "First UHC Plan"). (*Id.* at 1052, ¶ 13.) On or about February 1, 2019, Plaintiff's coverage under the First UHC Plan was replaced or substituted by UnitedHealthcare Group Policy number GA2Y9798IM (the "Second UHC Plan"). (*Id.* at 1052, ¶ 15.)

Lenzy management made premium payments directly to UnitedHealthcare to fund the Plans. (*Id.* at 1052-53, ¶¶ 16-17.) Lenzy funded the premium payments through monthly deductions from employee paychecks. (*Id.*) At some point, Lenzy stopped making the premium payments. (*Id.* at 1053, ¶ 17.) Lenzy, however, continued making the monthly deductions. (*Id.*)

UnitedHealthcare terminated the Second UHC Plan on or about June 2, 2019. (*Id.* at 1053, ¶ 18.) Lenzy owed UnitedHealthcare over $30,000 in unpaid premium payments. (*Id.* at 1053, ¶ 19.) Lenzy did nothing to ensure Plaintiff received coverage under another plan. (*Id.* at 1054, ¶ 25.) Even after the termination of the Second UHC Plan, Lenzy continued to deduct premium payments from Plaintiff's and other employees' paychecks. (*Id.*) Neither Lenzy, the Lenzy Board, nor Ms. Lenzy provided Plaintiff with notice or documentation of any modifications or changes to his insurance coverage, including termination of coverage. (*Id.* at 1060-61, ¶ 58.)

Ms. Lenzy did not lose coverage after UnitedHealthcare's termination because she had supplemental policies through Aflac and Medicare. (*Id.* at 1055, ¶ 32.) Plaintiff, on the other hand, was forced to go two or three months without medical coverage. (*Id.* at 1055, ¶ 30.) During this period, Plaintiff's marriage suffered because he and his wife were unable to receive medical care or procure prescription medicine. (*Id.* at 1055, ¶ 31.)

Lenzy terminated Plaintiff on March 16, 2020.  (*Id.* at 1059, ¶ 45.)  Throughout Plaintiff's tenure, Defendants were fiduciaries (*id.* at 1062, ¶ 66) and plan administrators under ERISA (*id.* at 1060, ¶ 55).  Concerning these roles, Defendants never provided Plaintiff with, among other documentation, a Summary Plan Description (*id.* at 1059-61, ¶¶ 50, 58) and Annual Funding Notices (*id.* at 1060, ¶¶ 53, 58).

Based on these core allegations, Plaintiff alleged the following claims: violation of ERISA disclosure and notification requirements (Count One), ERISA breach of fiduciary duties (Count Two), violation of Ohio Rev. Code § 4113.15(C) (Count Three), equitable estoppel under ERISA (Count Four), and promissory estoppel (Count Five).  (*Id.* at 1059-67.)

### III. Discussion of Liability and Damages

#### A. Count One: ERISA Disclosure and Notification Requirements

Plaintiff argues that the admitted allegations in his complaint establish that Defendants are liable for failing to supply him with various documentation mandated by ERISA.  (Doc. No. 53 at 1179.)  And, to Plaintiff, this failure entitles him to the *per diem* amount set forth in 29 U.S.C. § 1132(c)(1) and (3).

Section 1132(c)(1) provides:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, section 1025(a) of this title, or section 1032(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation

4

>described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1). And Section 1132(c)(3) reads:

>Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E) of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(3).

Upon review of these provisions and Plaintiff's complaint, Plaintiff has only clearly established that he is entitled to relief under Section 1132(c)(1)(A) for Defendants' failure to comply with Section 1021(f).[2] (Doc. No. 37 at 1060-61, ¶¶ 53, 58.) *See McDowell v. Price*, 853 F. Supp. 2d 776, 795 (E.D. Ark. 2012) (discussing Section 1132(c)(1)(A) claim for failure to comply with Section 1021(f)).

Section 1132(c)(1)(B) is not applicable because Plaintiff has not alleged that Defendants "fail[ed] or refus[ed] to comply with a **request** for any information . . . ." *Id.* (emphasis added); *see also e.g.*, *Clark v. Hewitt Assocs., LLC*, 294 F. Supp. 2d 946, 952 (N.D. Ill. 2003) (dismissing Section 1132(c)(1)(B) claim because the plaintiff never established that he requested information from the defendant).

Section 1132(c)(3) does not, on its face, entitle Plaintiff to relief because Plaintiff has not alleged that the Defendants failed to comply with 29 U.S.C. § 1021(d) or (e)(2), or 29 U.S.C. §

---

[2] Section 1021(f) requires administrators to, "for each plan year[,] provide a plan funding notice . . . ." 29 U.S.C. § 1021(f)(1). Such notice must be provided "not later than 120 days after the end of the plan year to which the notice relates." 29 U.S.C. § 1021(f)(3)(A). Here, Defendants have admitted to never providing Plaintiff with a funding notice for any plan year. (Doc. No. 37 at 1060, ¶¶ 53, 58.)

1082(d)(12)(E).  (Doc. No. 37 at 1059-60, ¶¶ 47-60 (citing only 29 U.S.C. § 1022(b), 29 U.S.C. § 1024(b)(1)(B), and 29 U.S.C. § 1021(f)).)

As to damages, Plaintiff explains that "[t]here are 1,095 days between January 1, 2018, and December 31, 2020.  At the maximum of the $100 per day, the statutory penalties equal $109,500."  (Doc. No. 53 at 1179.)[3]  This statement leaves more questions than answers.

To start, it is entirely unclear why January 1, 2018, and December 31, 2020, are the appropriate start and end dates for determining the penalty.  These dates are not referenced anywhere in Plaintiff's complaint.[4]  (*See* Doc. No. 37.)  Plaintiff's motion also fails to grapple with the fact that a Section 1132(c) monetary penalty is discretionary.  *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706 (6th Cir. 2014).  In determining the proper penalty amount, courts consider many factors, such as the severity of the violation, prejudice to the plaintiff, and whether the proposed penalty aligns with the purpose of Section 1132(c)(1).  *See Cultrona*, 936 F. Supp. 2d at 852-55.  Plaintiff has not explained why the maximum penalty is appropriate.

Accordingly, the Court denies Plaintiff's motion with respect to Count One.  Plaintiff may refile his motion, which must clearly outline the allegation(s) and the corresponding statutory provision(s) that entitle him to any relief.  Regarding the penalty amount, Plaintiff must (1) establish, through an affidavit and documentation, the appropriate timeline for determining

---

[3] The maximum penalty is now $110 per day.  *Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 852 (N.D. Ohio 2013).

[4] The Court has reviewed Plaintiff's notice of Defendants' admissions (Doc. No. 54), which was filed 11 days after his default judgment motion.  In the notice, Plaintiff explains that Defendants have admitted to never providing various documents – including the annual funding notice – between January 1, 2018, and December 31, 2020.  (*Id.* at 1197-98.)  But this filing does not explain how these dates are relevant to the specific allegations in Plaintiff's complaint – let alone how they are relevant to determining the penalty amount under Section 1132(c).

the statutory penalty and (2) provide reasoning – with legal citations – why the Court should use its discretionary power to award him his desired amount.

### B. Counts Two and Four: 29 U.S.C. § 1132(a)(3) Claims

The allegations in Plaintiff's complaint entitle him to relief on Counts Two and Four. Regarding Count Two, this Court has already stated in its previous Order that an employer breaches his fiduciary responsibility under ERISA when he fails to timely remit payments deducted from an employee's paycheck to the health insurance provider. *Washington v. Lenzy Fam. Inst., Inc.*, No. 1:21-cv-1102, 2022 WL 17850777, at *8 (N.D. Ohio Dec. 22, 2022) (citing *McFadden v. R&R Engine & Mach. Co.*, 102 F. Supp. 2d 458, 471 (N.D. Ohio 2000) and *Maccarone v. Lineage L., LLC*, No. CV 17-212-SDD-EWD, 2018 WL 6579161, at *5 (M.D. La. Dec. 13, 2018)). As to Count Four, Plaintiff has similarly shown that he is entitled to relief based on the following allegations: Defendants represented to Plaintiff that the money remitted from his paycheck would provide him with health insurance (Doc. No. 37 at 1066, ¶ 87); Defendants knew that Plaintiff lost health insurance despite continuing to remit money from his paychecks (*id.* at 1066, ¶ 88); and Plaintiff detrimentally relied on Defendants' representations regarding health insurance. (*id.* at 1067, ¶ 92). *See Bloemker v. Laborers' Loc. 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010) (setting forth the elements of an ERISA equitable estoppel claim).

But, again, Plaintiff runs into hurdles with damages. Counts Two and Four must be brought under 29 U.S.C. § 1132(a)(3)(B).[5] *McFadden*, 102 F. Supp. 2d at 473 (individual

---

[5] The only other provisions in ERISA's civil enforcement statute that could possibly apply are 29 U.S.C. §§ 1132(a)(1)(B) and (a)(2). But Section 1332(a)(1)(B) is not a fit because the plan at issue is no longer in existence. (Doc. No. 37 at 1054, ¶ 25.) *McFadden*, 102 F. Supp. 2d at 472 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) for the proposition that only members of an active plan may sue under Section

plaintiff's breach of fiduciary claim must be brought under 29 U.S.C. § 1132(a)(3)); *Reap v. Plumbers & Pipefitters Nat. Pension Fund*, 996 F. Supp. 2d 295, 299 n.4 (M.D. Pa. 2014) (stating that ERISA equitable estoppel claims must be brought under Section 1132(a)(3)); *see also Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 273 (6th Cir. 2016) (discussing an ERISA equitable estoppel claim brought under 29 U.S.C. § 1132(a)(3)).

The only remedy Plaintiff is entitled to under 29 U.S.C. § 1132(a)(3)(B) is "appropriate equitable relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993). The Supreme Court has "narrowly" construed this phrase. *Gerbec v. United States*, 164 F.3d 1015, 1019 (6th Cir. 1999).

> Our cases explain that the term 'equitable relief' in § 502(a)(3) [codified in Section 1132(a)(3)] is limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate). Under this Court's precedents, whether the remedy a plaintiff seeks 'is legal or equitable depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought.' Our precedents also prescribe a framework for resolving this inquiry. To determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought, we turn to standard treatises on equity, which establish the 'basic contours' of what equitable relief was typically available in premerger equity courts.

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (brackets in original omitted) (citations omitted).

Plaintiff has not performed this necessary analysis. Instead, he requests that he recover for his loss of health insurance coverage and the deterioration of his marriage caused by this loss of coverage. (Doc. No. 53 at 1182.) Presented in this fashion, these are the types of

---

1332(a)(1)(B)). Section 1332(a)(2) does not apply because Plaintiff is bringing this claim individually rather than for "the plan itself." *McFadden*, 102 F. Supp. 2d at 472-73 (discussing the interaction between 29 U.S.C. §§ 1109 and 1332(a)(2)) (emphasis omitted).

8

compensatory damages explicitly barred by Section 1132(a)(3)(B).  *See Mertens*, 508 U.S. at 255 (noting monetary relief for losses suffered is compensatory, not equitable, relief).

Accordingly, Plaintiff's motion is denied as it seeks damages on these claims.  If Plaintiff wishes to refile his motion on these claims, he must establish – with supporting caselaw – that the remedy sought constitutes "appropriate equitable relief" under Section 1132(a)(3)(B).

### C. Counts Three and Five: State Law Claims

Before the Court can determine whether Defendants are liable for damages under Counts Three and Five, the Court requests additional briefing on whether these claims are preempted by ERISA.  *See Delange v. Uptown Painting & Decorating, Inc.*, No. 2:11-cv-181-PPS-APR, 2013 WL 5639856, at *2-3 (N.D. Ind. Oct. 15, 2013) (declining to rule on default judgment motion until the plaintiff completed additional briefing on whether ERISA preempted defaulted state law claims).

ERISA preemption comes in two forms: express and complete preemption.  *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019).

*Express preemption*.  ERISA's preemption clause preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a) (emphasis added).  "ERISA's express preemption provision is strong."  *K.B.*, 929 F.3d at 800.  This provision "preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself."  *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (cleaned up).  "Depending on the case,

9

this analysis may consider whether the state law itself is preempted by ERISA, or 'whether a state-law *claim* relates to plans covered by ERISA." *Zahuranec v. CIGNA Healthcare, Inc.*, No. 1:19-cv-2781, 2020 WL 7335286, at *8 (N.D. Ohio Dec. 14, 2020) (quoting *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006)).

*Complete preemption*. "To determine whether ERISA completely preempts a state claim . . . [the Sixth Circuit] appl[ies] a two-step test." *K.B.*, 929 F.3d at 800. First, the plaintiff must complain of denial of benefits under the terms of an ERISA plan. *Id.* Second, the plaintiff must only allege a violation of a legal duty that is dependent on ERISA or an ERISA plan's terms. *Id.* "A state law claim that meets both requirements is 'in essence' a claim 'for the recovery of an ERISA plan benefit.'" *Id.* at 800-01 (quoting *Hogan v. Jacobson*, 823 F.3d 872, 880 (6th Cir. 2016)).

Here, Counts Three and Five are premised on the same facts as Counts Two and Four. Count Three alleges that Defendants violated Ohio Rev. Code § 4113.15 by not using the money deducted from Plaintiff's wages to pay healthcare premiums. (Doc. No. 37 at 1065, ¶ 84.) Count Five employs these facts to allege a state law promissory estoppel claim. (*See id.* at 1067-68, ¶¶ 94-101.) Based on the law cited above, the Court is concerned that one of the ERISA preemption doctrines may preclude Plaintiff from seeking relief under one or both of these claims. *See e.g.*, *Loffredo v. Daimler AG*, 500 F. App'x 491, 497 (6th Cir. 2012) (finding state promissory estoppel law claim preempted by ERISA); *Select Specialty Hosp.-Memphis, Inc. v. Trustees of Langston Companies, Inc.*, No. 2:19-cv-2654-JPM-TMP, 2020 WL 4275264, at *19 (W.D. Tenn. July 24, 2020) (collecting cases for the proposition that "state law promissory estoppel claims are generally preempted by ERISA."); *Christman v. Coresource, Inc.*, No. 2:14-

CV-1913, 2015 WL 10791973, at *6-8 (S.D. Ohio Aug. 26, 2015) (finding ERISA preempted the plaintiff's Ohio Prompt Pay Act Claim).

Given the possibility of preemption, Plaintiff's motion is denied as it relates to Counts Three and Five. Plaintiff, however, may refile his motion on these claims. Such motion must first address whether ERISA expressly preempts these claims and, if not, whether complete preemption applies. *Cf. Loffredo*, 500 Fed. App'x at 500 (recognizing that "each ERISA preemption case is complicated in its own way" and requires individual analysis).

## IV. Conclusion

For the reasons stated herein, Plaintiff motion is DENIED *without prejudice*. Plaintiff may refile his motion addressing all concerns raised in this Order on or before November 20, 2023.[6]

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
**Date**: October 18, 2023    UNITED STATES DISTRICT JUDGE

---

[6] The Court will address Plaintiff's request for attorney fees after the issues identified in this Order are resolved. (*See* Doc. No. 53 at 1179.)

11