UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD WASHINGTON, | ) | CASE NO. 1:21-cv-1102 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LENZY FAMILY INSTITUTE, | ) | **AND ORDER** |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiff Leonard Washington's ("Plaintiff") second motion for default judgment and for determination of damages. (Doc. No. 58.) For the reasons explained below, Plaintiff's motion is GRANTED in part and DENIED in part.

I. **Background**

    A.    **Factual Background**

Defendant Lenzy Institute, Inc. ("Lenzy") is an Ohio nonprofit corporation offering mental health diagnostic and curative services. (Doc. 37 at 1051, ¶ 7.)[1] Lenzy's principal place of business is in Canton, Ohio. (*Id.*) Defendant Lenzy Institute Board of Directors ("Lenzy Board") is Lenzy's governing body. (*Id.* at 1051, ¶ 8.) Defendant Elizabeth Lenzy ("Ms. Lenzy") is the Executive Director and key principal of the Lenzy Institute. (*Id.* at 1051, ¶ 9.) Lenzy hired Plaintiff on or about October 27, 2016, as a Residential House Worker and Treatment Counselor. (*Id.* at 1051, ¶ 10.) Plaintiff became a full-time Lenzy employee in January 2018. (*Id.* at 1052, ¶ 14.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

On or about January 15, 2018, Lenzy announced a new healthcare group coverage plan, and Plaintiff became insured under UnitedHealthcare Group Policy number 02Y9798 (the "First UHC Plan"). (*Id.* at 1052, ¶ 13.) On or about February 1, 2019, Plaintiff's coverage under the First UHC Plan was replaced or substituted by UnitedHealthcare Group Policy number GA2Y9798IM (the "Second UHC Plan"). (*Id.* at 1052, ¶ 15.) Lenzy management made premium payments directly to UnitedHealthcare to fund the Plans. (*Id.* at 1052–53, ¶¶ 16–17.) Lenzy funded the premium payments through monthly deductions from employee paychecks. (*Id.*)

At some point, Lenzy stopped making the premium payments. (*Id.* at 1053, ¶ 17.) Lenzy, however, continued making the monthly deductions. (*Id.*) UnitedHealthcare terminated the Second UHC Plan on or about June 2, 2019. (*Id.* at 1053, ¶ 18.) Lenzy owed UnitedHealthcare over $30,000 in unpaid premium payments. (*Id.* at 1053, ¶ 19.) Lenzy did nothing to ensure Plaintiff received coverage under another plan. (*Id.* at 1054, ¶ 25.) Even after the termination of the Second UHC Plan, Lenzy continued to deduct premium payments from Plaintiff's and other employees' paychecks. (*Id.*) Neither Lenzy, the Lenzy Board, nor Ms. Lenzy provided Plaintiff with notice or documentation of any modifications or changes to his insurance coverage, including termination of coverage. (*Id.* at 1060–61, ¶ 58.) Plaintiff only found out about the termination in coverage when a prescription was denied at a Marc's pharmacy and Plaintiff called Ms. Lenzy about the denial. (*Id.* at 1054, ¶ 23.)

During this time, Ms. Lenzy herself did not lose coverage after UnitedHealthcare's termination because she had supplemental policies through Aflac and Medicare. (*Id.* at 1055, ¶ 32.) Plaintiff, on the other hand, was forced to go two or three months without medical coverage. (*Id.* at 1055, ¶ 30.) During this period, Plaintiff's marriage suffered because he and

his wife were unable to receive medical care or procure prescription medicine. (*Id.* at 1055, ¶ 31.)

Lenzy terminated Plaintiff on March 16, 2020. (*Id.* at 1059, ¶ 45.) Throughout Plaintiff's tenure, Defendants were fiduciaries (*id.* at 1062, ¶ 66) and plan administrators under ERISA (*id.* at 1060, ¶ 55). Concerning these roles, Defendants never provided Plaintiff with, among other documentation, a Summary Plan Description (*id.* at 1059–61, ¶¶ 50, 58) and Annual Funding Notices (*id.* at 1060, ¶¶ 53, 58).

### B. Procedural History

Plaintiff filed his initial complaint on May 28, 2021. (Doc. 1.) Plaintiff filed an amended complaint on October 29, 2021. (Doc. 22.) On March 6, 2023, Plaintiff filed a second amended complaint, naming as defendants: Lenzy Family Institute, Inc.; Lenzy Family Institute Board of Directors; and Elizabeth Lenzy. (Doc. 37.) Plaintiff brought five claims: violation of ERISA (Count One); breach of fiduciary duties (Count Two); breach of fiduciary duties under R.C. § 4113.15(C) (Count Three); equitable estoppel under ERISA (Count Four); and promissory estoppel (Count Five).

After Defendants' counsel withdrew representation, this Court held a telephonic status conference on June 13, 2023. The Court set June 30, 2023 as the deadline for Defendants to respond to the second amended complaint, along with other deadlines. Defendants did not submit a responsive pleading on or before June 30, 2023. Plaintiff filed a motion for default judgment on July 6, 2023. (Doc. 50.) However, contrary to Federal Rule of Civil Procedure 55, Plaintiff did not first request an entry of default from the Clerk. Therefore, the Court denied the motion for default judgment without prejudice. On July 7, 2023, Plaintiff submitted an

application for an entry of default. (Doc. 51.) The Clerk entered default on July 10, 2023. (Doc. 52.) Plaintiff subsequently submitted a motion for default judgment. (Doc. 53.)

On October 18, 2023, the Court denied Plaintiff's motion without prejudice. (Doc. 55.) The Court did so because there was insufficient briefing or factual development of several issues without which the Court could not properly rule on the motion.

As it relates to Count One, Plaintiff's motion sought damages for violations of 29 U.S.C. §1132(c)(1) and (3). However, the motion only demonstrated liability under § 1132(c)(1), not § 1132(c)(3). (*Id.* at 1220–21.) Further, the motion did not sufficiently address damages available to Plaintiff for violations of § 1132. (*Id.* at 1221–22.) Damages are discretionary and statutorily set at a maximum of $100 per day.[2] (*Id.*) Plaintiff failed to explain why the Court should award damages at all, and if so, why the maximum was necessary in this case. (*Id.*) Further, Plaintiff failed to explain how he calculated the number of days in violation. (*Id.*) The Court instructed Plaintiff to refile his motion, clearly articulating the violations of ERISA, why statutory penalties should be imposed at all, and the calculation of damages if so. (*Id.* at 1222–23.)

As it relates to Counts Two and Four, the Court previously determined that Plaintiff was entitled to relief. (*Id.* at 1223.) However, the Court found that Plaintiff did not show entitlement to the monetary damages he seeks. (*Id.*) Specifically, Plaintiff failed to explain how the exclusive remedy under 29 U.S.C. § 1132 permitted monetary relief under current case law, which only allows "appropriate equitable relief." (*Id.* at 1224.) If Plaintiff wanted to recover monetary damages on these claims, the Court instructed Plaintiff to refile the motion to provide the necessary analysis. (*Id.* at 1225.)

---

[2] As noted in the Court's prior order, the maximum is now $110. (Doc. 55 at 1222.) Plaintiff has requested $100 as the statutory maximum. For purposes of this Order, the Court will assume the maximum is $100 as requested by Plaintiff.

Lastly, as it relates to Counts Three and Five, the Court instructed Plaintiff to refile his motion with briefing on whether these claims were preempted by ERISA.  (*Id.*)

Plaintiff submitted another motion for default judgment, which is now before the Court.  (Doc. 58.)  That motion addresses the above deficiencies identified by the Court and also addresses Plaintiff's request for attorneys' fees and costs.  (*Id.*)

II.  **Analysis**

A.  **Legal Standard**

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b).  Here, Plaintiff applied for an entry of default on July 7, 2023.  (Doc. 51.)  The clerk entered Defendants' default on July 10, 2023.  (Doc. 52.)

Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments.  *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  Unlike allegations on liability, damages allegations are not taken as true at this stage in litigation.  *N. Innovations Holding Corp. v. Keto Plan, Inc.*, No. 21-cv-2172, 2022 WL 999150, at *3 (N.D. Ohio April 4, 2022).  "[T]he civil rules 'require that the party moving for a default judgment must present

some evidence of its damages.'" *IBEW Loc. Union 82 v. Union Lighting Prot.*, No. 11-CV-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, No. 07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Federal Rule of Civil Procedure 55(b)(2) provides that a district court "may" hold a hearing on a motion for default judgment when necessary to "conduct an accounting," or "determine the amount of damages."  But by its terms, the rule "does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")).  An evidentiary hearing is not necessary in this case because the defendants "have shown that they do not intend to defend in this action." *See Bradley v. Miller*, No. 10-cv-760, 2015 WL 2130980, at *2 n.2 (S.D. Ohio May 7, 2015). Further, as required by *Vesligaj*, 331 F. App'x at 354, there is a "basis for the damages specified" in Plaintiff's motion for default judgment—namely, the statutory penalty calculation and calculation of compensatory damages.

### B. Count One: ERISA Statutory Penalties

Plaintiff argues that the Court should assess Defendants the maximum statutory penalty of $100 per day for each violation of 29 U.S.C. § 1132(c)(1)(A).[3]  Plaintiff argues that Defendants violated § 1132(c)(1) by failing to provide annual funding notice for the 2018 plan year.  (Doc. 58 at 1242.)  Plan funding notice must be provided "not later than 120 days after the end of the plan year."  29 U.S.C. § 1021(f)(3).  Thus, starting from December 31, 2018, Plaintiff

---

[3] Plaintiff does not argue, as he has in the past motions, entitlement to relief for violations of § 1132(c)(1)(B) nor § 1132(c)(3).

asserts that Defendants were required to provide notice no later than April 30, 2019 for the 2018 plan year. (Doc. 58 at 1242.) Defendants failed to timely do so. (*Id.* at 1241.) In fact, Defendants still have not done so. (*Id.*) Recognizing that Plaintiff cannot recover statutory damages to date, Plaintiff choose December 31, 2020 as the end date, the last year of his employment. (*Id.* at 1242.) From these dates, Plaintiff claims 975 days have passed. (*Id.*) Applying the statutory maximum, Plaintiff requests $97,500. (*Id.*) However, Plaintiff's calculation contains an error. Plaintiff asserts that Defendants had 120 days after the end of the 2018 plan year to provide notice. As stated by Plaintiff, that date is April 30, 2019 (120 days after December 31, 2018). But then Plaintiff uses *May 1, 2018* to calculate the time difference rather than *May 1, 2019*. Thus, Plaintiff comes to 975 days, but that includes an extra year. Between May 1, 2019 and December 31, 2020, there are 610 days. Accordingly, the Court will not use 975 days for any penalty imposed for this violation, but instead, 610 days.

Separately, Plaintiff also argues that Defendants violated § 1132(c)(1) by failing to provide annual funding notice for the 2019 plan year. (*Id.*) Section 1132(c)(1) states that "each violation described in subparagraph (A) with respect to any single participant . . . shall be treated as a separate violation." Therefore, Plaintiff claims he should be able to recover for this secondary violation. The 2019 plan year was terminated on June 2, 2019. (*Id.*) Defendants were required to give notice of plan termination within 120 days, or September 30, 2019. (*Id.*) Defendants did not provide that notice. (*Id.*) Using the same December 31, 2020 end date, 457 days have passed. (*Id.*) Applying the statutory maximum of $100, Plaintiff requests $45,700 for this violation. (*Id.* at 1243.)

Combined, Plaintiff requests $143,200 for these violations. (*Id.*) Plaintiff acknowledges a § 1132(c) monetary penalty is discretionary. *See Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d

698, 706 (6th Cir. 2014).  Plaintiff argues that the facts of this case warrant a penalty "near the maximum."  (Doc. 58 at 1241.)

"The purpose of 29 U.S.C. § 1132(c) is 'to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so.'"  *Bustetter v. CEVA Logistics U.S., Inc.*, No. 18-cv-58, 2019 WL 6719485, at *5 (E.D. Ky. December 10, 2019) (quoting *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994)).  A company has a "duty to disclose the plan's terms to the employee" regardless of any good faith beliefs.  *Gatlin v. Nat'l Healthcare Corp.*, 16 F. App'x 283, 289 (6th Cir. 2001).  Accordingly, courts find the failure to provide notice "intentional" when the administrator makes "no effort to educate themselves on their legal obligations as trustees."  *McDowell v. Price*, 853 F.Supp.2d 776, 796 (E.D. Ark. 2012).  In similar vein, "neither prejudice nor injury are prerequisites to recovery under the penalty provisions of the statute[.]"  *Cultrona*, 748 F.3d at 708 (quoting *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994)).  Thus, "[a]lthough relevant, a defendant's good faith and the absence of harm do not preclude the imposition of the § 1132(c)(1)(A) penalty."  *Hoskins v. Snap-On Inc. Ret. Plan*, No. 08-cv-3069, 2010 WL 2899074, at *22 (N.D. Iowa July 20, 2010) (quoting *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006)).

While Plaintiff explains the above legal framework, Plaintiff does not explain why the imposition of a penalty here is warranted under these facts.  Presumably, Plaintiff's recitation of the facts here supports the imposition of a penalty.  For instance, Plaintiff explains that Plaintiff received no notice of either the 2018 plan nor termination of the 2019 plan.  (Doc. 58 at 1243–44.)  He only discovered the termination of the 2019 plan at a Marc's pharmacy when trying to get a refill on medication, which was denied.  (*Id.*)  Blindsided, Plaintiff had to pay out of pocket

expenses and forego medical treatment and prescriptions, all the while Defendants were still deducting premium payments from Plaintiff's paychecks.  (*Id.*)

But Plaintiff does not explain, and provides no case law analogies for, the amount of the penalty the Court should impose in this case.  For instance, there is no analysis regarding similar cases and the penalties those courts imposed and why the facts of this case deserve the most severe penalty.  However, after reviewing some of the case law cited by Plaintiff, the Court finds that a $25 per day penalty should be imposed.

In *Bustetter*, the court imposed a $25 per day penalty after finding the defendant's conduct amounted to negligence and where the defendant agreed to comply once notified of the deficiency.  2019 WL 6719485, at *6.  In *Cultrona*, the court imposed a $55 per day penalty where defendants failed to provide a key document after plaintiff requested it, but where the court also found the plaintiff's allegations of prejudice and harm were "perfunctory and unconvincing."  748 F.3d at 708.  In *Hoskins*, the court assessed a $25 per day penalty where the defendant's conduct was "discourteous, not in good faith, capable of prejudicing . . . and delay[ed] resolution of the dispute."  2010 WL 2899074, at *23.

Under the facts of this case, a $25 per day penalty is appropriate.  The facts here indicate that Defendants were more than just negligent.  Defendants never agreed to comply with their obligations, and indeed, have stopped defending this case.  Moreover, Plaintiff has identified some harm and prejudice from the failure to timely notify.  For instance, Defendants continued to withdraw premiums from Plaintiff's paychecks which was not being used to pay the provider.  During this time period, Plaintiff believed he had insurance, when in fact he did not.  After discovering he had no insurance at a Marc's pharmacy, Plaintiff had to pay out of pocket expenses and had to make medical decisions he would not otherwise have needed to do if he had

insurance. If Defendants complied with ERISA, these issues would have been discovered. And, all the while, Defendants had separate coverage for themselves. Yet at the same time, it appears that the lack of coverage did not impact Plaintiff until he sought a prescription a few months later. Plaintiff claims that he forewent medical treatment due to the lapse in coverage but fails to specify what precisely he decided to forgo.

For these reasons, a statutory penalty of $25 per day is appropriate. For the first violation consisting of 610 days, the penalty is $15,250. For the second violation consisting of 457 days, the penalty is $11,425. The total penalty is $26,675.

### C. Counts Two and Four: Monetary Damages

Plaintiff seeks to recover actual damages for his claims of breach of fiduciary duties and equitable estoppel.[4] Specifically, Plaintiff seeks damages relating to: insurance premiums withdrawn from his paychecks that were not used to pay the insurer in the amount of $2,943.24; out-of-pocket expenses for medical-related care in the amount of $165.00; and out-of-pocket expenses relating to prescription medications in the amount of $341.98. (Doc. 58 at 1247–48.)

As stated in the Court's previous orders, both of these claims must be brought under 29 U.S.C. § 1132(a)(3)(B). *See McFadden v. R&R Engine & Mach. Co.*, 102 F.Supp.2d 458, 471 (N.D. Ohio 2000). Under that statute, Plaintiff is entitled to "appropriate equitable relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993). However, the Supreme Court has narrowly construed this phrase. *See Gerbec v. United States*, 164 F.3d 1015, 1019 (6th Cir. 1999) (citing *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)). Under *Montanile*, Plaintiff may only seek "those categories of relief that were typically available

---

[4] The Court has already determined Plaintiff is entitled to relief on these claims. *Washington v. Lenzy Fam. Inst., Inc.*, No. 21-cv-1102, 2023 WL 6879788, at *4 (N.D. Ohio Dec. 22, 2022). The only issue is what damages Plaintiff is entitled to.

in equity during the dates of the divided bench." *Montanile*, 577 U.S. 142.  Accordingly, the Court instructed Plaintiff, to the extent Plaintiff sought compensatory damages, to explain how those damages fit into the statutory scheme of "appropriate equitable relief," particularly considering Supreme Court precedent.

Plaintiff argues the compensatory damages sought are "appropriate equitable relief" under 29 U.S.C. § 1132.  (Doc. 58 at 1245–47.)  First, Plaintiff argues the holding in *Mertens* has been roundly criticized because it may mean that plaintiffs are left without a remedy.  (*Id.* at 1245.)  The Sixth Circuit questioned the applicability of *Mertens* in *Gerbec*, noting the fierce criticism of the Supreme Court's limited holding.  164 F.3d at 1024.  Second, the Supreme Court, in *dicta*, seemingly limited its holding in *Mertens* to non-fiduciaries.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011) ("insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference").  Meaning, compensatory damages against fiduciaries are "appropriate equitable relief."  *Id.* at 441 ("Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.").

Most recently, the Sixth Circuit held that "both disgorgement and equitable restitution may be pursued through § 1132(a)(3)."  *Patterson v. United HealthCare Ins. Co.*, 76 F.4th 487, 497 (6th Cir. 2023).  In *Patterson*, plaintiff was in a car accident.  *Id.* at 491.  After plaintiff's insurer paid medical bills, plaintiff sued the other car driver.  *Id.* at 492.  That case settled and plaintiff's insurer, citing the policy, requested plaintiff remit to them the cost of the medical bills it paid for.  *Id.*  Plaintiff paid the insurer $25,000.  *Id.*  However, plaintiff later discovered that his policy contained no such provision requiring him to pay the settlement money to his insurer.  *Id.*

Plaintiff sued under § 1132(a)(3), seeking reimbursement of the $25,000.  *Id.*  The district court granted a motion to dismiss, finding that the $25,000 was not "appropriate equitable relief" because it really was compensatory damages.  *Id.*  The Sixth Circuit reversed.  *Id.* at 496.  The central question was "whether a plaintiff 'typically' would have been able to obtain in a pre-merger equity action the remedy he seeks under ERISA, recognizing that equity courts often granted relief outside the bounds of 'equitable' relief as defined by the statute."  *Id.* (citing *Montanile*, 577 U.S. at 142).  In this case, the Sixth Circuit found that the breach of fiduciary duty claim had an "equitable basis," and that the insurer breached a fiduciary duty by improperly soliciting the funds to be used "for its own purposes."  *Id.*  Further, plaintiff could seek the $25,000 under § 1132(a)(3) because "both disgorgement and equitable restitution may be pursued through § 1132(a)(3)."  *Id.* at 497.  Both of these are equitable remedies available to courts sitting in equity.

Similar to *Patterson*, the damages Plaintiff seeks here include insurance premiums paid to Defendants which were never paid to the insurer.  (Doc. 58 at 1247.)  These damages, like those in *Patterson*, are subject to equitable remedies to "deprive the wrongdoers of their net profits from unlawful activity."  *Patterson*, 76 F.4th at 497.  Accordingly, the Court will grant Plaintiff's request for $2,943.24 relating to the premium payments.

As it relates to the out-of-pocket expenses Plaintiff requests, *Patterson* is less helpful.  *Patterson* allowed the plaintiff to seek the $25,000 because it could be characterized as disgorgement or restitution.  Neither out-of-pocket expense neatly fit into either of those two categories.  However, other courts in this district have more generally allowed plaintiffs to seek compensatory damages for breach of fiduciary duties.  *See Van Loo v. Cajun Operating Co.*, 64 F.Supp.3d 1007, 1024 (E.D. Mich. 2014) (discussing whether a plaintiff can seek compensatory

damages under § 1132 and concluding that plaintiff could proceed if they established a breach of fiduciary duty); *Teisman v. United of Omaha Life Ins. Co.*, 908 F.Supp.2d 875, 880 (W.D. Mich. 2012) ("when a fiduciary is involved, compensatory relief is a 'typical equitable remedy' available under § 1132(a)(3)."). Accordingly, the Court will allow Plaintiff to recover these expenses, totaling $506.98.

### D. Counts Three and Five: ERISA Preemption

Plaintiff also seeks default judgment on his state law claims. Count Three asserts a violation of R.C. § 4113.15(C). (Doc. 37 at 1064.) Under this statute, Plaintiff claims that an employer must timely pay the appropriate entity necessary to provide the benefits relating to any employee authorized deductions. (Doc. 58 at 1250.) In essence, Defendants, by deducting the premium payments from Plaintiff's paychecks, were required to timely remit those payments to the health insurer ensure medical coverage. (*Id.*) Defendants, having failed to do so, violated R.C. § 4113.15(C). (*Id.*)

Count Five asserts a common law promissory estoppel claim under Ohio law. (Doc. 37 at 1067.) Plaintiff claims that Defendant's promised to provide medical coverage and related benefits. (*Id.*) Plaintiff allegedly reasonably relied on that promise to his detriment by allowing premium payments to be deducted from his paychecks. (*Id.* at 1067–68.) When those deducted payments were not made, Plaintiff was harmed. (*Id.*)

These claims are premised on Defendants' failure to pay premiums deducted from Plaintiff's paychecks. As damages, Plaintiff seeks repayment of the premiums that were deducted from his paycheck, as well as the recoupment of monies spent out of pocket while he had no insurance coverage. These are the exact same grounds and damages Plaintiff seeks through his ERISA claims under Counts Two and Four. In its Order, the Court instructed

Plaintiff to explain whether ERISA preempts his state law claims. (Doc. 55 at 1225.) While Plaintiff has provided such argument (Doc. 58 at 1248), the Court finds it unnecessary to decide whether ERISA preempts the state law claims.

Plaintiff seeks identical relief for his ERISA claims and state law claims—$3,450.22 in compensatory damages representing the premium payments deducted but not paid and out-of-pocket expenses. (*Id.* at 1252–53.) Plaintiff acknowledges as much for the promissory estoppel claim. (*Id.* at 1252 ("even if this Court were to deem the promissory estoppel claim to be preempted by ERISA, the same relief may be provided to Plaintiff for ERISA equitable estoppel [Count Four].").) However, Federal courts cannot grant default judgment as to damages that would result in a double recovery. *Rauh v. Zheng*, No. 23-cv-2272, 2024 WL 3345453, at *7 (N.D. Ohio July 9, 2024) ("Federal courts are prohibited from granting default judgment as to damages that would result in a double recovery for the same injury") (citing *Can IV Packard Square, LLC v. Schubiner*, No. 21-1717, 2022 WL 3335697, at *1 (6th Cir. Aug. 12, 2022)); *Credit Acceptance Corp. v. Davisson*, No. 08-cv-107, 2008 WL 11378851, at *5 (N.D. Ohio Nov. 24, 2008) ("Ohio law prevents a double recovery for the same injury"). Accordingly, because the Court grants Plaintiff the same relief under Counts Two and Four, the Court will not grant Plaintiff damages on Counts Three and Five and declines to decide whether these claims are preempted.

E. **Attorneys' Fees**

Plaintiff seeks attorneys' fees and costs in the amount of $50,791.50 and $2,592.13 respectively. (Doc. 58 at 1253.) Under 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Sixth Circuit uses a five-factor test to assess a request for attorneys' fees and costs under § 1132:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006).  No single factor is dispositive.  *Id.* at 642–43.

First, Defendants' degree of culpability and bad faith weighs in favor of an award of attorneys' fees and costs.  Defendants' failure to provide notice of the 2018 plan is a clear violation of ERISA.  That failure, while perhaps not egregious on its own, is heightened by Defendants' subsequent failure to pay premiums Defendants were deducting from Plaintiff's paychecks, causing the termination of the plan, and then failing to notify Plaintiff of such termination.  In short, the ERISA violations in this case demonstrate a high degree of culpability and bad faith.

Second, Defendants appear to be able to pay an award of attorneys' fees and costs.  Plaintiff asserts that Defendants owned four properties.  (Doc. 58 at 1255.)  These properties have a combined appraisal value of $347,700 with $21,535.69 in taxes owed.  (*Id.*)  None of the properties currently have mortgages.  (*Id.*)  Accordingly, the Court finds Defendants are able to pay attorneys' fees and costs and so this factor weighs in favor of granting Plaintiff's request for attorneys' fees and costs.

Third, an award of attorneys' fees and costs in this case is likely to have a deterrent effect on others.  This factor "is one that is likely to have more significance in a case where the defendant is highly culpable" than in cases of honest mistakes.  *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996).  Moreover, where the facts present a close case and unique circumstances, this factor will be less important.  *Moon*, 461 F.3d at 645.  Here, Defendants were

"highly culpable" and this is not a case of an honest mistake.  Moreover, this case does not present a close question nor unique factual scenarios.  Instead, Defendants abandoned their ERISA obligations all the while continued to collect premium payments for which they were not remitting to the appropriate insurer.  In other words, this is not a case where Defendants can explain their conduct through an honest mistake.

Fourth, Plaintiff is not requesting fees sought to confer a common benefit on all participants and beneficiaries of the ERISA plan.  Therefore, this factor weighs against a finding of attorneys' fees.

Fifth, Plaintiff's position in this matter is meritorious.  The established facts demonstrate clear violations of ERISA.  Moreover, Defendants have failed to litigate this matter, resulting in the default judgment as explained above.  This is not an "extremely close case."  *Moon*, 461 F.3d at at 646.

In sum, the factors overwhelming weigh in favor of granting Plaintiff's request for attorneys' fees and costs, and so the Court will do so.

The next inquiry is the amount of attorneys' fees and costs Plaintiff is entitled to.  Attorneys' fees must be reasonable such that it "is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."  *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).  The Court starts with calculating the number of hours reasonably expended on the litigation and multiplies it by a reasonable hourly rate.  *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006).  Plaintiff bears the burden of demonstrating entitlement to attorneys' fees with "evidence supporting the hours worked and rates claimed."  *Reed*, 179 F.3d at 472 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In support of his request for attorneys' fees, Plaintiff submitted an affidavit from his attorneys, including time records. (Doc. 58-6.) The affidavit explains that Plaintiff's attorneys worked an hourly rate of $250.00 or $225.00 and paralegals worked an hourly rate of $85.00. (*Id.* at 1270.) The affidavit attaches all relevant bills which totals $50,791.50. (*Id.* at 1271.) The Court is satisfied that all time is adequately documented and the time expended was reasonable. The submitted documents, however, do not explain whether the hourly rate is reasonable. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791(citing *Adock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The affidavit submitted does not explain the relevant attorney's and paralegal's skill level nor does the affidavit contain information relating to comparable rates for other attorneys in the relevant market. Nonetheless, other courts considering attorney fees in ERISA cases have awarded attorneys' fees at rates lower than or like those requested here by Plaintiff. *See Soltysiak v. Unum Provident Corp.*, 480 F.Supp.2d 970, 976 (W.D. Mich. 2007) (awarding attorneys' fees at a $280 hourly rate for attorneys and $100 for paralegals in an ERISA action); *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F.Supp.2d 958, 967 (N.D. Ohio 2007) (awarding $51,989.50 in attorneys' fees based on an hourly rate of $250 in ERISA action). Accordingly, the Court finds the hourly rate requested here is reasonable. In conclusion, the Court grants Plaintiff's request for reasonable attorneys' fees in the amount of $50,791.50.

Plaintiff also submitted invoices for incurred litigation costs totaling $2,592.13. (Doc 58-6.) The Court finds these costs are reasonable and awards Plaintiffs $2,592.13 in costs. (*Id.* at 1271.)

F.     **Pre- and Post- Judgment Interest**

Plaintiff requests pre- and post- judgment interest.  (Doc. 58 at 1255.)  In ERISA cases, an award of pre-judgment interest is in the discretion of the court.  *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002) ("Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles.").  However, plaintiffs are not entitled to pre-judgment interest on an award of 29 U.S.C. 1132 statutory penalties.  *See Greenwald v. Liberty Life Assur. Co. of Boston*, 932 F.Supp.2d 1018, 1052 (D. Neb. 2013) (declining to award pre-judgment interest on § 1132 award).  This is because pre-judgment interest is designed to compensate plaintiffs for the loss of money owed.  *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013) ("One purpose of an award of pre-judgment interest is to compensate plaintiffs for the lost interest value of money wrongly withheld") (quotation and citation omitted).  "But § 1132 damages are punitive, not compensatory, in nature."  *Greenwald*, 932 F.Supp.2d at 1052.  Accordingly, the Court declines to award pre-judgment interest on the statutory penalty under § 1132.

However, Plaintiff is entitled to pre-judgment interests on the compensatory portion of his damages in this case stemming from the premium payments and out of pocket expenses, totaling $3,450.22.  Generally, pre-judgment interest is governed by state law, but in ERISA cases, federal courts typically apply federal law because ERISA is an exclusively federal issue.  *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (explaining that in calculating pre-judgment interest in ERISA cases, courts disfavor "simply adopting state law interest rates" because "ERISA is not an area primarily of state concern") (quotations and citations omitted). The Sixth Circuit has upheld pre-judgment calculations which use the federal post-judgment rate.

*See id.* ("We have upheld a district court's award of prejudgment interest calculated under 28 U.S.C. § 1961") (citing *Ford v. Uniroyal*, 154 F.3d 613, 616 (6th Cir. 1998)).  Here, the post-judgment interest rate under 28 U.S.C. § 1961 is the weekly average one-year Treasury constant maturities rate for the calendar week preceding judgment.  As of August 19, 2024, that rate is 4.45%.  Accordingly, the Court will apply pre-judgment interest on the $3,450.22.  The Court will use the date of the filing of the complaint as the accrual date for pre-judgment interest.  Here, that date is May 28, 2021.  Judgment is entered as of August 19, 2024.  Thus, pre-judgment interest on $3,450.22 at a rate of 4.45% compounded annually from May 28, 2021 through August 19, 2024 is $521.24.

Post-judgment interest is statutorily mandated under 28 U.S.C. § 1961.  As explained above, the rate is 4.45%.  Thus, Plaintiff is entitled to post-judgment interest beginning on August 19, 2024 at a rate of 4.45% compounded annually.  Post-judgment interest is inclusive of all money damages, including pre-judgment interest, attorneys' fees, and costs.  *See Caffey*, 302 F.3d at 586 ("postjudgment interest should be awarded on the entire amount of the judgment, including any prejudgment interest."); *Vick v. Metropolitan Life Ins. Co.*, No. 03-cv-73124, 2006 WL 8431558, * at 6 (E.D. Mich. June 22, 2006) ("Post-judgment interest should be imposed on all money damages including pre-judgment interest and attorney fees.").  Accordingly, Plaintiff is entitled to post-judgment interest on the combined sum of $84,030.09.

### III. Conclusion

For the reasons explained above, Plaintiff's motion for default judgment is GRANTED in part and DENIED in part.  Plaintiff is entitled to penalties under 29 U.S.C. § 1132 in the amount of $26,675.00.  Plaintiff is entitled to $3,450.22 in compensatory damages.  The Court further awards Plaintiff attorney's fees in the amount of $50,791.50 and costs in the amount of

$2,592.13. Plaintiff is entitled to pre-judgment interest on the compensatory damages in the amount of $521.24. Plaintiff is entitled to post-judgment interest on all amounts pursuant to 28 U.S.C. § 1961 at 4.45%.

**IT IS SO ORDERED.**

Date: August 19, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE